UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                    :
KEITH ALLRED, derivatively on behalf of Aclaris                      :
Therapeutics, Inc.,                                                  :
                                                                    :
                                        Plaintiff,                  :
                                                                    :
              -v-                                                   :
                                                                    :
NEAL WALKER, et al.,                                                :
                                                                    :
                                        Defendants.                 :
------------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: _12/09/2021_

19-cv-10641 (LJL)
19-cv-10876 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Derivative plaintiffs Keith Allred ("Allred") and Bruce Brown ("Brown" and collectively with Allred, "Derivative Plaintiffs") move for final approval of the settlement set forth in the stipulation and agreement of settlement dated July 29, 2021; entry of the proposed order and final judgment and dismissal of all claims; an award of attorneys' fees and reimbursement of expenses to be paid by defendants' insurer; and service awards of $1,500 to each of Allred, Brown, and stockholder Celeste Piper ("Piper" and collectively with Derivative Plaintiffs, "Plaintiffs").  Dkt. No. 28.[1]

## BACKGROUND

The first derivative complaint in this action was filed on November 15, 2019 by Allred. Dkt. No. 1.  It asserts claims on behalf of Aclaris Therapeutics, Inc. ("Aclaris" or "Company") (as nominal defendant) against the directors of Aclaris and its Chief Financial Officer.  The allegations appear to stem from allegations made by shareholders of Aclaris in a parallel civil

---

[1] Simultaneous with this opinion, the Court issues an opinion and order approving, with modifications, the settlement of the parallel securities class action against Aclaris and various of its officers.  *See Rosi v. Aclaris Therapeutics, Inc. et al*, 19-cv-7118 (S.D.N.Y).

securities action against Aclaris and its officers, *Rosi v. Aclaris Therapeutics, Inc.*, 19-cv-7118 (S.D.N.Y.), claiming that, during the time period May 8, 2018 through June 20, 2019, Aclaris made false and misleading statements and omissions in connection with the risks, efficacy, and side effects of Aclaris's then-product ESKATA™ ("ESKATA"), which was used for the treatment of raised seborrheic keratosis, and failed to ensure the Company maintained adequate internal controls.  The complaint alleges a derivative claim against the individual defendants under Section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a)(1), for causing Aclaris to issue a 2019 proxy statement that was allegedly false and misleading and for negligently making false and misleading statements in that proxy statement.  Dkt. No. 1 ¶¶ 125-135.  It also alleges that the individual defendants breached their fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight and supervision, including by failing to maintain an adequate system of oversight, disclosure controls and procedures and internal controls, by making and causing Aclaris to make false and misleading statements, and by failing to correct and causing Aclaris to fail to correct any of the false and misleading statements.  *Id.* ¶¶ 136-148.  The complaint also alleges that the individual defendants breached their fiduciary duties by causing themselves to receive excessive compensation from Aclaris given their misconduct.  *Id.*  Finally, the complaint contains claims for unjust enrichment, "abuse of control," gross mismanagement, and waste of corporate assets.  *Id.* ¶¶ 149-168.

On November 25, 2019, Brown filed a nearly identical shareholder derivative action on behalf of Aclaris alleging substantially similar facts and making substantially similar claims to those made by Allred, *see Brown v. Walker et al*, 19-cv-10876 (S.D.N.Y.), Dkt. No. 1, and on December 12, 2019, the Court entered an order consolidating the derivative actions into one action, Dkt. No. 9.

On January 10, 2020, the Court entered a joint stipulation and order staying the consolidated derivative action pending the resolution of the anticipated motion to dismiss the complaint in the parallel *Rosi* action.  Dkt. No. 11.  On May 18, 2021, after the Court issued an order in *Rosi* granting in part and denying in part the motion to dismiss, the Court entered a stipulation and order staying the consolidated derivative action pending the resolution of a motion for summary judgment in *Rosi*.  Dkt. No. 18.

On July 30, 2021, simultaneous with the submission of a proposed settlement in *Rosi*, Derivative Plaintiffs in this case made a motion for preliminary approval of a settlement of the consolidated derivative action.  Dkt. No. 22.  The Court held a hearing on that motion on August 17, 2021, and the next day, entered an order granting preliminary approval to the settlement. Dkt. Nos. 26-27.  The Court also approved the form and manner of notice and set a date for the settlement hearing.  Dkt. No. 27.

The settlement is reflected in the Stipulation and Agreement of Settlement ("Settlement Stipulation").  Dkt. No. 25-1.  The Settlement Stipulation requires Aclaris, within 90 days of the entry of judgment, to adopt resolutions and amend appropriate committee charters to ensure adherence to a series of identified corporate governance reforms.  *Id.* § 2.1 & Ex. A.  The corporate governance reforms require the Compliance Committee to report to the Audit Committee annually on the Chief Executive Officer's and Chief Financial Officer's contribution to Aclaris's culture of ethics and compliance and their effectiveness and dedication to ensuring Aclaris's compliance with applicable laws, rules, and regulations.  Also, the Compliance Committee must, with the assistance of the Chief Compliance Officer and an independent advisor, review Aclaris's internal controls over compliance and implement changes as necessary, which shall include an evaluation of the effectiveness of Aclaris's newly implemented controls

and procedures.  The corporate governance reforms also enhance Aclaris's training procedures related to its code of conduct, risk management and compliance.  The corporate governance reforms require that new members of Aclaris's workforce and management receive special training sessions within fourteen days of hiring or appointment.  The corporate governance reforms also require that the Company strengthen its whistleblower policy and post the amended policy to its website.  Dkt. No. 31 ¶ 34.  The reforms also provide new responsibilities for the Company's recently created R&D Committee.

In exchange, the releasing parties, including Plaintiffs, Plaintiffs' counsel, Aclaris, and current Aclaris shareholders, agree to a release of all claims that could have been asserted in the derivative action as well as in an inspection demand that was served (but not responded to) prior to the settlement of the action.  In addition, in consideration of the substantial benefits conferred upon Aclaris as a direct result of the corporate governance reforms and Plaintiffs' and Plaintiffs' counsel's efforts in connection with the derivative action and the inspection demand, and subject to court approval, the individual defendants agree to cause their insurer to pay Plaintiffs' attorneys' fees and expenses in the total amount of $425,000—an amount that has been approved by the independent, non-defendant directors of the Aclaris board, in a good faith exercise of their business judgment.  The settling parties also agree that Plaintiffs' counsel may apply to the Court for a service award of up to $1,500 for each of the Plaintiffs, to be paid only upon court approval from the fee and expense award.  The settlement is not contingent upon the Court's approval of either the fee award or the service award.

The Court held the settlement hearing on November 30, 2021.  Dkt. No. 26.  Prior to the hearing, notice of the settlement and the hearing was published on GlobeNewswire, in an Aclaris

4

Form 8-K, and on Aclaris's website.  Dkt. No. 35.  No objections were submitted to the settlement.  Dkt. No. 36.

## DISCUSSION

Rule 23.1(c) of the Federal Rules of Civil Procedure provides that derivative actions may only be settled with court approval.  *See* Fed. R. Civ. P. 23.1(c).  "In the context of a derivative action settled on behalf of the class of all shareholders, the Court must consider whether the settlement was procedurally fair—*i.e.*, whether it was the result of arm's length negotiations and whether Plaintiffs' counsel adequately and effectively represented the interests of the shareholder class—and whether the substantive terms of the settlement 'are in the interests of the company and its shareholders relative to the likely rewards of litigation.'"  *Scott v. Wei*, 2021 WL 1910657, at *1 (S.D.N.Y. May 12, 2021) (quoting *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 340 (S.D.N.Y. 2011)).  When considering the fairness, reasonableness, and adequacy of a proposed settlement, "the Court is not to substitute its judgment for that of the parties, nor is it to reopen and enter into negotiations with the parties, nor is it to turn consideration of the adequacy of the settlement into a trial or a rehearsal of the trial."  *In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 292 (S.D.N.Y. 1996) (internal quotation marks omitted).  The Court first considers the fairness, reasonableness, and adequacy of the proposed settlement.  It then turns to the attorneys' fees award and the service award request.

## I.      The Settlement Is Fair, Reasonable, and Adequate

The derivative settlement is procedurally fair.  Plaintiffs have demonstrated that it was reached as the result of arm's length negotiations and by counsel on both sides with the requisite experience and ability.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel . . . .'"

(quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)).  The settlement was reached with the assistance of an experienced and well-regarded mediator.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (noting that the involvement of a mediator in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"); *see also In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d 277, 280 (S.D.N.Y. 2015) (settlement that was product of "extensive formal mediation" with a neutral mediator are "hallmarks of a non-collusive, arm's length settlement process").  Plaintiffs sent a settlement demand letter to defendants before the mediation and defendants responded to that demand.  The parties also exchanged substantive mediation briefs, addressing the allegations in the action.  The parties did not reach a substantive agreement on the terms of the proposed settlement until the end of a full-day mediation.  They did not negotiate attorneys' fees and expenses until after they reached an agreement on the substantive terms of the settlement, and the agreement on the substantive terms of the settlement was not contingent upon the parties reaching an agreement on attorneys' fees.  Dkt. No. 25-1.

Each of the firms representing Plaintiffs has extensive experience in shareholder derivative actions.  The Robbins LLP firm is one of the most recognized firms nationwide in shareholders rights and shareholder derivative litigation.  Dkt. No. 33, Ex. A.  The Rosen Law Firm has a long record of shareholder derivative litigation.  Dkt. No. 32, Ex A.  The Brown Law Firm was founded in 2014 to specialize in shareholder derivative litigation.  Dkt. No. 31, Ex. A.

The derivative settlement also is fair, reasonable, and adequate from a substantive standpoint.  The factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), inform the Court's analysis of substantive fairness.  *See Scott*, 2021 WL 1910657, at *1; *In re Fab*, 148 F. Supp. 3d at 281; *In re Pfizer*, 780 F. Supp. 2d at 340.  Those factors include:

"(1) the reasonableness of the benefits achieved by the settlement in light of the potential recovery at trial; (2) the likelihood of success in light of the risks posed by continued litigation; (3) the likely duration and cost of continued litigation; and (4) any shareholder objections to the proposed settlement." *Scott*, 2021 WL 1910657, at *2.

The settlement achieved substantial benefits to Aclaris in the form of the corporate governance reforms set forth in the three-page exhibit to the Settlement Stipulation. Dkt. No. 25-1 at 25-27. In the Settlement Stipulation, Aclaris and its board acknowledge and agree that the corporate governance reforms confer substantial benefits upon Aclaris and its stockholders and that the filing, pendency, and settlement of the derivative action and the inspection demand were the cause of Aclaris's decision to adopt, implement, and maintain the corporate governance reforms. *Id.* at 13-14. That acknowledgement was confirmed by counsel's representations at the hearing before the Court. Each of the reforms is new, and none was required by law or the requirements of Aclaris's auditors. "Reforms addressing the issues giving rise to the derivative suit 'are exactly the type that courts deem to confer a substantial benefit on the company.'" *Scott v. Weig*, 2018 WL 2254541, at *4 (S.D.N.Y. May 17, 2018) (quoting *In re Fab*, 148 F. Supp. 3d at 281).

Against the substantial benefits conferred by the litigation were the risks posed by continued litigation. "The doctrine of demand futility, the business judgment rule, and the generally uncertain prospect of establishing a breach of fiduciary duties combine to make shareholder derivative suits an infamously uphill battle for plaintiffs." *In re Fab*, 148 F. Supp. 3d at 281-82; *see In re AOL Time Warner Shareholder Derivative Litig.*, 2006 WL 2572114, at *5 (S.D.N.Y. Sept. 6, 2006) (noting difficulties of proving demand futility and breach of fiduciary duty, overcoming the "substantial protection of the business judgment rule," and the

task of "proving highly contested damages").  Here, even to proceed, Plaintiffs here would have

had to establish demand futility, a significant challenge under Delaware law which would have

been applicable here to this Delaware corporation.  *See United Food and Commercial Workers*

*Union and Participating Food Industry Employers Tri-State Pension Fund v. Zuckerberg*, 2021

WL 4344361 (Del. Sept. 23, 2021) (setting forth test for demand futility); *In re AOL*, 2006 WL

2572114, at *5 ("[P]roving demand futility is merely the first of several hurdles Plaintiffs would

face before ever reaching trial.").  Assuming Plaintiffs surmounted that hurdle, they would have

had to establish liability.  Plaintiffs' primary claim was that the independent directors failed in

their duty of oversight; the complaint failed to identify facts supporting any affirmative

wrongdoing by any of the individual defendants.  But the Delaware courts have aptly remarked

that a claim for failure to exercise a duty of oversight is "the most difficult theory in corporation

law upon which a plaintiff might hope to win a judgment."  *In re Caremark Int'l Derivative*

*Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996); *see also Scott*, 2021 WL 1910657, at *3; *In re Pfizer*,

780 F. Supp. 2d at 340.  That basis of liability, as well as the others in the derivative complaint,

would have been made all the more challenging by the Court's decision on defendants' motion to

dismiss in the *Rosi* matter that many of the statements upon which those plaintiffs and Plaintiffs

here base their claim were not misleading at all.  Even then, had Plaintiffs established liability, it

would have been challenging to establish and recover damages, including in light of the question

whether Aclaris suffered any damages at all from the alleged breaches of duty and the protection

that any exculpation provision might have accorded the individual defendants.

Litigation of Plaintiffs' claims through trial and an appeal would have been extremely

time-consuming and expensive.  Plaintiffs would have had to engage in extensive document

discovery, taken numerous depositions, and had to retain experts and take the depositions of

experts for the defendants.  Litigation would not have ended any time soon.  "By contrast, the Settlement assures immediate corporate reforms."  *In re Fab*, 148 F. Supp. 3d at 282.

Finally, and tellingly, there have been no objections to the proposed settlement.  "[T]he favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in [the] *Grinnell* inquiry."  *Wal-Mart Stores*, 396 F.3d at 119.  Also, the independent, non-defendant directors on Aclaris's board, who presumptively are charged with making decisions in the best interests of Aclaris and its shareholders, including regarding the "corporation's litigation asset," *Zuckerberg*, 2021 WL 4344361 at *7,  unanimously approved the settlement and each of its terms as in the best interests of Aclaris and its stockholders.

The settlement accordingly is approved.

## II.    The Attorneys' Fees Award

Plaintiffs request that the Court approve an award of attorneys' fees and expenses in the amount of $425,000, to be paid by the insurer for the individual defendants.  Dkt. No. 30 at 18.  The application is granted.

An award of counsel fees is justified in a shareholder derivative action "where the derivative action results in a substantial non-monetary benefit to a corporation."  *In re Fab*, 148 F. Supp. 3d at 283 (quoting *Kaplan v. Rand*, 192 F.3d 60, 69 (2d Cir.1999)).  "The same principle applies to substantive benefits achieved by settlement."  *Id.*; *see also In re Pfizer*, 780 F. Supp. 2d at 343 (". . . it is well-established that plaintiffs who confer a corporate benefit may be awarded attorneys' fees and expenses under Delaware law.").

In determining the size of a fee award to approve in a derivative case, courts in this District frequently "consider the so-called *Goldberger* factors: (i) the benefit recovered in relation to the settlement; (ii) the magnitude and complexities of the litigation; (iii) the litigation

risk; (iv) the quality of representation; (v) public policy considerations; and (vi) the time and labor spent." *Scott*, 2021 WL 1910657 at *3 (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)); *see also In re Pfizer*, 780 F. Supp. 2d at 343 (same).

Plaintiffs argue that the Court should approve the fees award because it was negotiated at arm's length between the parties. Dkt. No. 30 at 18-19. They stress that the fee amount is not to be paid from a common fund and that it was negotiated between sophisticated counsel with the benefit of an experienced and reputable mediator after the parties had agreed on the substantive terms of the settlement. *Id.* They also note that it was approved by the independent, non-defendant directors of Aclaris. *Id.*

The few courts that have considered the issue over the years have held that great, and potentially dispositive, weight should be given to a fee amount not to be paid from a common fund negotiated at arm's length between sophisticated counsel after the substantive terms of a settlement have been agreed. *See Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *25 (S.D.N.Y. Mar. 24, 2014) ("That the Attorneys' Fee Payment was later separately negotiated weighs in favor of its reasonableness." (citing cases)); *Elias v. Ungar's Food Products, Inc.*, 2013 WL 12426604, at *8 (D.N.J. Jan. 28, 2013) (approving "fee agreement [that] was reached only after the parties had agreed on the principle terms of the settlement"); *McAlarnen v. Swift Transp. Co., Inc.*, 2010 WL 365823, at *12 (E.D. Pa. Jan. 29, 2010) (holding that fact that "counsel [did not] engage in arm's-length negotiations over fees and costs to be paid by Defendant" until after substantive settlement terms had been agreed weighed in favor of approving fee petition); *In re Schering-Plough/Merck Merger Litigation*, 2010 WL 1257722, at *8 (D.N.J. Mar. 26, 2010) (approving fee award that was "the product of mediation conducted before a disinterested and revered member of the legal community"); *Weber v. Government*

*Employees Ins. Co.*, 262 F.R.D. 431, 451 (D.N.J. 2009) (approving award where "the parties' agreement with regard to attorney's fees was the product of arm's-length negotiations which did not commence until after the parties had reached agreement in principle of all the terms relating to relief for the Class" (internal quotation marks omitted)).

There is force to the argument that the Court should defer to the agreement of the parties reached at arms-length regarding an appropriate fee where that fee is not to be paid from a common fund and was agreed in the presence of a mediator and after the substantive terms of the settlement were reached. The fact that the fee is not to be paid from the common fund eliminates the concern, present in many securities class action settlements, that the fees to be awarded to counsel will deplete the funds available to pay injured class members who have released their claims. The fact that the fees are negotiated and agreed only after the substantive settlement terms have been agreed and that the agreement on the substantive settlement terms is not contingent on an agreement on fees addresses the further risk that counsel will trade away the interests of her client in exchange for the defendant to pay her attorneys' fees. The presence of a mediator for both the substantive settlement and the later negotiation of fees also goes far to eliminate the risk of collusion. At the same time, by respecting the arms-length agreement between the parties regarding fees, the Court allows each party to mitigate its own risk—the risk on the part of plaintiff that the Court will grant what plaintiff would consider an inordinately small award and the risk on the part of defendant that the Court will be extravagant in its fee award. Each side, with knowledge that if they do not reach agreement the Court will determine the fee award in light of the *Goldberger* factors, can assess the award that it believes to be reasonable. Assuming an arms-length negotiation between experienced counsel, the award should fall within the wide range of fees the Court would be permitted to award even without the

agreement of the parties.  The fact that the independent, non-defendant directors approved the fee agreement lends further force to the reasonableness of that agreement.  *See* § 1839 Dismissal or Compromise of Shareholder-Derivative Suits, 7C Fed. Prac. & Proc. Civ. § 1839 (3d ed.) ("In reaching its decision, the court may take into consideration the fact that the corporation, through a disinterested board of directors, endorses the proposal.").

In any event, the requested fee award here satisfies the *Goldberger* factors.  Although the tasks counsel performed in this shareholder derivative matter before it was settled were not particularly complex, the quality of counsel was high and the benefit provided to Aclaris and its shareholders was substantial.  Counsel took litigation risk; had the motion to dismiss in the *Rosi* matter been granted in its entirety or had this matter continued to its duration, there was a real prospect Plaintiffs would have recovered nothing.  Public policy also favors an award of attorneys' fees in derivative actions—which keep corporate directors honest and improve corporate governance.  *See In re Fab*, 148 F. Supp. 3d at 284 (holding that "[a]ward of attorney's fees in excess of a 1.0 lodestar multiplier incentivizes counsel to take [shareholder derivative] matters on contingency, further promoting compliance with commercial law by increasing the likelihood of enforcement");  *In re AOL*, 2010 WL 363113, at *23 (fee awards incentivize "future counsel to devise remedies as an alternative to money, strengthening corporate America in the long run through innovation and prophylaxis").  Finally, in terms of time and labor spent, each firm devoted substantial time to the matter.  The Brown Law Firm devoted approximately 310 hours, the Robbins law firm devoted 298 hours; and the Rosen Law Firm devoted thirty-nine hours.  Dkt. Nos. 37-1, 37-2, 37-3.  The total lodestar calculated by Plaintiffs' counsel is $347,509.75 for a lodestar multiplier of 1.19.  Dkt. No. 30 at 24.  Although not all of those hours were necessary or reasonable, the tasks performed were appropriate.  They included research and

drafting the complaints in the action, handling various procedural matters such as the consolidation of the actions, preparing lists of corporate governance reforms, drafting the mediation statement and participating in the mediation, and drafting the settlement papers. Even assuming a far lower lodestar, the fee request of $425,000 would still be reasonable. *See Wal-Mart Stores*, 396 F.3d at 123 (affirming multiplier of 3.5); *In re Fab*, 148 F. Supp. 3d at 283 (quoting lodestar multipliers of 3 to 5).

## III.    **Service Awards**

Finally, Plaintiffs ask the Court to approve service awards for each of the three named plaintiffs in the amount of $1,500 each. Like the fee award, the service award amount was negotiated between Plaintiffs' counsel and defendants. If approved, it would be paid out of the attorneys' fees award and not from a common fund.

Unlike service awards in federal securities class actions, which are governed by both statute and judge-made law, service awards in shareholder derivative actions are purely a creature of the common law. In shareholder derivative cases, "[c]ourts in this Circuit routinely award . . . costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Fab*, 148 F. Supp. 3d at 285 (quoting *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272-73 (S.D.N.Y. 2012)). The concerns animating judicial scrutiny of service awards in shareholder derivative and securities class actions are similar to those animating judicial scrutiny of attorneys' fees awards. A named plaintiff acts as fiduciary for others—either current shareholders (in a derivative case) or a class of purchasers or sellers of securities (in the case of a class action). In any case where a named plaintiff is acting as representative, an improvident award can suggest or give rise to the concern that the named

plaintiff is benefitting at the expense of the persons for whom he or she acts as fiduciary either directly, through a payment from a common fund otherwise available to shareholders, or indirectly, by compromising the claims of the absent shareholders in exchange for payment in the form of a service fee. *Cf. Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 434 (S.D.N.Y. 2014) (Fair Labor Standards Act case; opining that "confidence and trust in a class representative to pursue claims with diligence" depends "in large measure [on] knowing that the class representative stands in the same shoes as all other members of the class" (quoting *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007)); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 720 (E.D.N.Y. 1989) (securities fraud case; expressing concerns that class representatives "may be tempted to accept suboptimal settlements" if they "expect routinely to receive special awards in addition to their share of the recovery"); *Women's Comm. for Equal Employment Opportunity (WC = EO) v. Nat'l Broadcasting Co.*, 76 F.R.D. 173, 180 (S.D.N.Y. 1977) (employment discrimination class action; asserting that "grave problems of collusion are raised" when class representatives "make what amounts to a separate peace with defendants"); *cf. Alleghany Corp. v. Kirby*, 218 F. Supp. 164, 175-76 (S.D.N.Y. 1963) (stating that settlement of derivative case would be set aside if individual in a position to control it for plaintiffs and who was proponent of settlement had received an undisclosed benefit from defendants).

There does not exist, in the case of service awards for named plaintiffs, the same line of cases that accord weight to a negotiated agreement with respect to attorneys' fees between defendants and plaintiffs' counsel. There are different concerns in the case of service awards than there are in the case of attorneys' fees awards. In the case of a service award, there is a risk that, without safeguards on the size of a service award, a named plaintiff could be swayed to

agree to a settlement that is less than satisfactory to those on whose behalf he purports to act by the fact or the promise of a large payment to himself personally.  Judicial review helps ensure that any service award is proportionate to the costs (tangible and intangible) that the named plaintiff is forced to bear in his capacity as representative or, at the least, that the award is not so large as to create the appearance of a conflict of interest.  *See In re Fab*, 148 F. Supp. 3d at 285.

Plaintiffs admit that they do not have time records to support the request for a service award of the type that the Second Circuit has indicated should be provided in securities class actions.  *See In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 133 (2d Cir. 2014) (holding that service award request should be supported by an affidavit demonstrating a "thorough accounting of hours dedicated to the litigation and a statement that these hours constituted lost work time").  They do not identify any costs that the named plaintiffs had to bear or that they could have expected to bear.  Shareholder derivative actions based on alleged corporate mismanagement rarely require discovery from or the depositions of the named plaintiffs.  None of the named plaintiffs is alleged to have participated in court hearings or the mediation.  None appears to have taken any personal risk in lending their name to the lawsuit.

Counsel asserts that the request is based on "the Stockholders' selfless involvement, interest, and participation in this action, on behalf of [Aclaris], by virtue of holding ownership in [Aclaris] and reviewing and authorizing the actions taken in this matter," without which, they claim, "none of the substantial benefits in this case could have been achieved."  Dkt. No. 37 at 2.  In short, they did "little but lend a name."  *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 370 (E.D.N.Y. 2010).  They had standing to sue and authorized the lawsuit to be filed in their names.  The interest in providing an incentive for a plaintiff to bring and remain in the

lawsuit thus supports only a nominal award, particularly when there are three named plaintiffs.

Accordingly, the Court will reduce the requested award by half and approve an award of $750 to

each of the named plaintiffs to be paid out of the attorneys' fee award.

## CONCLUSION

The settlement is approved.  The Court awards attorneys' fees and expenses in the

amount of $425,000.  The Court approves a service award of $750 to each of the named

plaintiffs to be paid out of the attorneys' fees award.

The Clerk of Court is respectfully directed to close Dkt. No. 28 and to close the case.

The Clerk of Court is also respectfully directed to close member case 19-cv-10876, *Brown v.*

*Walker et al.*


SO ORDERED.


Dated: December 9, 2021
     New York, New York                        _____
                                           LEWIS J. LIMAN
                                  United States District Judge